IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

Leigh Rushton Weaver,                )        Civil Action No.  8:14-cv-01083-MGL-JDA
*on behalf of KHW minor child*,      )
                                     )
                Plaintiff,           )
                                     )
        vs.                          )        **REPORT AND RECOMMENDATION**
                                     )        **OF MAGISTRATE JUDGE**
Carolyn W. Colvin,                   )
Commissioner of Social Security,     )
                                     )
                Defendant.           )

        This matter is before the Court for a Report and Recommendation pursuant to 28

U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(a), D.S.C.  Plaintiff brought this

action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final

decision of Defendant Commissioner of Social Security ("the Commissioner"), denying

Plaintiff's claim for Social Security Income ("SSI") benefits.  For the reasons set forth below,

it is recommended that the decision of the Commissioner be reversed and remanded for

administrative action consistent with this recommendation, pursuant to sentence four of 42

U.S.C. § 405(g).

**PROCEDURAL HISTORY**

        On March 29, 2011, Plaintiff filed an application for SSI on behalf of KHW, a child

under the age of 18.   [R. 120–29.]   Plaintiff's claim was denied initially and on

reconsideration by the Social Security Administration ("the Administration"). [R. 103–06,

114–16.]  Plaintiff requested a hearing before an administrative law judge ("ALJ"), and, on

September 13, 2012, ALJ Ann G. Paschall conducted a de novo hearing on Plaintiff's claim. [R. 67–98.]

The ALJ issued a decision on October 18, 2012, finding Plaintiff not disabled under the Social Security Act ("the Act"). [R. 19–30.] The ALJ explained the Childhood Standard for Disability applicable in this case. [R. 19–21.] The ALJ also explained that the issue before her was whether the Plaintiff was disabled under section 1614(a)(3)(c) of the Act for the period before age 18. [R. 19.] At Step 1,[1] the ALJ found Plaintiff was born on August 14, 1996, and was therefore in the "adolescent (age 12 to attainment of age 18)" age group on March 29, 2011, the date the application was filed; and was currently an adolescent. [R. 22, Finding 1.] The ALJ also found that Plaintiff had not engaged in substantial gainful activity since March 29, 2011, the application date. [R. 22, Finding 2.]    At Step 2, the ALJ found Plaintiff had the following severe impairments: bipolar disorder with anger management issues; posttraumatic stress disorder; attention deficit hyperactivity disorder; depressions; dyspraxia; sensory integration disorder; and learning disorders in math and reading. [R. 22, Finding 3.] At Step 3, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the criteria of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 22, Finding 4.] The ALJ specifically considered Childhood Listing 112.04 (Mood Disorders) [R. 22] and determined that, before attaining age 18, Plaintiff did not have an impairment or combination of impairments that functionally equaled the severity of the listings. [R. 22,

---

[1] The three-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

Finding 5.] Therefore, the ALJ found Plaintiff was not disabled as defined in the Act since March 29, 2011, the date the application was filed. [R. 30, Finding 6.]

Plaintiff requested Appeals Council review of the ALJ's decision, but the Council declined review. [R. 1–5.] Plaintiff filed this action for judicial review on March 21, 2014. [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ committed errors of law in finding that KHW was not disabled, and the ALJ 's decision is not supported by substantial evidence. Specifically, Plaintiff alleges the ALJ erred by:

(1)    failing to properly consider and evaluate evidence pursuant to 20 C.F.R. § 416.927, including the opinions of KHW's treating sources Antonio Castellvi[2], M.D. ("Dr. Castellvi") and Sherry Burns, Ph.D ("Dr. Burns"); and,

(2)    finding that KHW had a less than marked limitation in the domain of attending and completing tasks.

[Doc. 18-1 at 1–2.]

The Commissioner, on the other hand, contends the ALJ's decision should be affirmed because:

(1)    the ALJ properly weighed and evaluated the opinions of Dr. Castellvi and Dr. Burns [Doc. 20 at 4–9]; and,

(2)    substantial evidence supports the ALJ's finding that KHW had less than marked limitation in the domain of attending and completing tasks [*id.* at 9–11].

[*Id.* at 12.]

---

[2]Although spelled in different ways by Plaintiff and Commissioner and in treatment notes, the Court believes the correct spelling of the name is Castellvi. [*See* R. 531.]

3

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court.  *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also  Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).  Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence.

4

*See Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court

5

to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Comm'r*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand."). After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction. *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's

6

failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[3]  With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings.  *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## **APPLICABLE LAW**

I.     **The Three-Step Evaluation for Individuals under Age 18**

---

[3]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence.  *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect.  *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply the more stringent *Borders* inquiry.

A child[4] is considered disabled for purposes of SSI if the child "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(i).  To facilitate a uniform and efficient processing of disability claims, the Administration has promulgated regulations under the Act that reduce the statutory definition of disability to a series of sequential questions.  *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 460–62 (1983) (discussing considerations in adult disability matter and noting "need for efficiency" in considering disability claims).  The regulations set forth a three-step sequential analysis for determining whether a child is disabled for purposes of children's SSI benefits:

(1)    Is the child engaged in any substantial gainful activity?[5]  If so, benefits are denied.

(2)    Does the child have a medically severe impairment or combination of impairments?[6]  If not, benefits are denied.

---

[4] A "child" is an individual under the age of 18.  *See* 42 U.S.C. § 1382c(a)(3)(C)(i).

[5] In determining whether a child has engaged in substantial gainful activity ("SGA"), the Commissioner uses the same rules as used for adults.  *See* 20 C.F.R. § 416.924(b).  SGA is work activity that is both substantial and gainful and involves doing significant physical or mental activities for pay or profit, regardless of whether a profit is realized.  *Id.* § 416.972.

[6] For a child, a medically determinable impairment or combination of impairments is not severe if it is a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations.  20 C.F.R. § 416.924(c).

8

      (3)      Does the child's impairment(s) meet, medically equal, or functionally equal an impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1?[7]  If so, benefits are granted.

20 C.F.R. § 416.924(a)–(d).

      To assess functional equivalence, the Commissioner assesses the interactive and cumulative effects of all of the child's impairments for which there is record evidence, including any non-severe impairments.  20 C.F.R. § 416.926a(a).  First, the Commissioner considers everything the child does at home, at school, and in the community and determines what the child cannot do, has difficulty doing, needs help doing, or is restricted from doing because of his impairment(s).  *Id.*  When the Commissioner assesses the child's functional limitations, he considers all the relevant factors contained in 20 C.F.R. §§ 416.924a, 416.924b, and 416.929, including (1) how well the child can initiate and sustain activities, how much extra help he needs, and the effects of structured or supportive settings; (2) how the child functions in school; and (3) the effects of the child's medications or other treatment.  *Id.*

---

[7] In determining whether a child's impairment meets one of the listed impairments, the Commissioner compares the symptoms, signs, and laboratory findings of an impairment, as shown in the medical evidence, with the medical criteria for the listed impairment.  *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  "If a severe impairment is of the degree set forth in a Listing, and such impairment meets the twelve-month durational requirement, . . . then [the child] 'is conclusively presumed to be disabled and entitled to benefits.'"  *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994) (quoting *Bowen v. City of New York*, 476 U.S. 467, 471 (1986)).  "For a [child] to show that his impairment matches a listing, it must meet *all* of the specified medical criteria."  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original).  It is not enough that the impairment have the diagnosis of a listed impairment; the child "must have a medically determinable impairment(s) that satisfies all of the criteria of the listing."  20 C.F.R. § 416.925(d); *see Bowen v. Yuckert*, 482 U.S. 137, 146 & n.5 (1987) (noting it is the claimant's burden to show a medically determinable impairments and to furnish medical evidence regarding the condition).

Next, the Commissioner considers how the child functions in activities in terms of six domains, which are broad areas of functioning intended to capture what a child can or cannot do.  *Id.* § 416.926a(b)(1).  These domains are

(1) acquiring and using information;

(2) attending and completing tasks;

(3) interacting and relating with others;

(4) moving about and manipulating objects;

(5) caring for oneself; and

(6) health and physical well being.

*Id.*  Limitations are assessed by comparing the child's functioning to the functioning of children of the same age who do not have impairments.  *Id.* §§ 416.924a(b)(3), 416.926a(b)(1).  To establish functional equivalence, the child must have a medically determinable impairment or combination of impairments that results either in "marked" limitations in two domains or an "extreme" limitation in one domain.  *Id.* § 416.926a(a), (d).  A child has a "marked" limitation in a domain when his impairment or combination of impairments seriously interferes with his ability to independently initiate, sustain, or complete activities.  *Id.* § 416.926a(e)(2)(i).  A "marked" limitation is a limitation that is "more than moderate" but "less than extreme" and may limit only one or several activities or functions.  *Id.*  A child has an "extreme" limitation in a domain when his impairment or combination of impairments very seriously interferes with his ability to independently initiate, sustain, or complete activities.  *Id.* § 416.926a(e)(3)(i).  An "extreme" limitation is a limitation that is "more than marked," and "extreme" is the rating given to the worst

10

limitations, although it does not necessarily mean the child experiences a total lack or loss of ability to function. *Id.*

## II.     Developing the Record

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ is required to inquire fully into each relevant issue. *Snyder*, 307 F.2d at 520. The performance of this duty is particularly important when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980). In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

## III.     Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. § 416.927(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the

11

opinion, 20 C.F.R. § 416.927(c). Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 416.927(c)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986). Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. § 416.927(d). However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a

determination on a claimant's disability.  20 C.F.R. § 416.917.  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  *Id.*

## V.     Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'"  *Id.* (quoting *Craig*, 76 F.3d at 594).  Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain."  *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs."  *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with

13

the objective medical evidence.  20 C.F.R. § 416.928.  Indeed, the Fourth Circuit has

rejected a rule which would require the claimant to demonstrate objective evidence of the

pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the

Commissioner to promulgate and distribute to all administrative law judges within the circuit

a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v.

Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990).  The Commissioner thereafter issued the

following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth
> Circuit (North Carolina, South Carolina, Maryland, Virginia and
> West Virginia), Social Security Ruling (SSR) 88-13, Titles II
> and XVI: Evaluation of Pain and Other Symptoms:
>
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying
> physical or [m]ental impairment that could reasonably be
> expected to cause pain is shown by medically acceptable
> objective evidence, such as clinical or laboratory diagnostic
> techniques, the adjudicator must evaluate the disabling effects
> of a disability claimant's pain, even though its intensity or
> severity is shown only by subjective evidence.  If an underlying
> impairment capable of causing pain is shown, subjective
> evidence of the pain, its intensity or degree can, by itself,
> support a finding of disability.  Objective medical evidence of
> pain, its intensity or degree (i.e., manifestations of the
> functional effects of pain such as deteriorating nerve or muscle
> tissue, muscle spasm, or sensory or motor disruption), if
> available, should be obtained and considered.  Because pain
> is not readily susceptible of objective proof, however, the
> absence of objective medical evidence of the intensity,
> severity, degree or functional effect of pain is not
> determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990).  SSR 90-1p has since been

superseded by SSR 96-7p, which is consistent with SSR 90-1p.  *See* SSR 96-7p, 61 Fed.

Reg. 34,483-01 (July 2, 1996).  SSR 96-7p provides, "If an individual's statements about

pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. § 416.929(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria. *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor. But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

### APPLICATION AND ANALYSIS

**Treating Physician Opinions**

Plaintiff contends the ALJ did not appropriately weigh the statutory factors for evaluating medical opinions, as set forth in 20 C.F.R. § 416.927, and erred by her failure to give controlling weight to the opinions offered by KHW's primary care provider Dr. Castellvi and her psychologist Dr. Burns. [Doc. 18-1 at 8–11.] Plaintiff argues Dr.

15

Castellvi's opinion was supported by his own treatment notes, a psychological evaluation by Todd Morton, Ph.D, behavioral therapy notes, and treatment notes from Dr. Burns. [*Id.* at 10.]  Plaintiff also argues the ALJ failed to even acknowledge that Dr. Burns was a treating source and failed to indicate the weight assigned to Dr. Burns's opinion as required by 20 C.F.R. § 416.927. [*Id.* at 11.]  The Commissioner, on the other hand, argues that the ALJ properly weighed and considered Dr. Castellvi and Dr. Burns's opinions in accordance with 20 C.F.R. § 416.927 and relevant Social Security law.  The Court agrees with Plaintiff.

### *Dr. Castellvi's Opinion*

KHW first saw Dr. Castellvi with Center for Family Medicine–Residents ("CFM") on or about October 21, 2010, for a well child check. [R. 279.]  At that time, KHW explained that she wanted to speak with someone about problems with anger management and that she often fought with her mother and sister, and had inappropriate outbursts.  [*Id.*]  Dr. Castellvi directed KHW to make an appointment with Dr. Grace for group meetings to discuss anger management.  [R. 283.]

On November 22, 2010, Plaintiff saw Dr. Grace with CFM for a counseling session. [R. 276.]  KHW indicated that she had a good group of friends at school, always felt tired and sleeps a couple of hours after school, cried alone from time to time, had a hard time concentrating in school, and felt a lot of pressure to perform well in school but felt she could not do it.  [*Id.*]  Dr. Grace noted that Plaintiff presented with symptoms of depression lasting greater than two weeks; was having depressed mood most of the day with diminished interest in her usual daily activities.  [*Id.*]  Dr. Grace also noted several positive alarm features for depression and manic disorder. [*Id.*]  Dr. Grace diagnosed KHW with depression and started her on Prozac. [R. 277.]

16

On December 17, 2010, KHW saw Dr. Castellvi on follow up for her depression medication. [R. 272.] KHW indicated she was feeling a lot better and was not yelling and snapping at her sister as much. [*Id.*] Dr. Castellvi noted positive alarm features for depression and manic disorder, and he added Melatonin and Zantac to KHW's medication regimen. [R. 272, 274.] On January 19, 2011, KHW saw Dr. Marc Bingham ("Dr. Bingham) with CFM on follow up for her depression medication. [R. 268.] KHW indicated that she still gets very agitated with her sister and at times starts to cry. [*Id.*] KHW explained the medication worked in the beginning, but it was not working as well now. [*Id.*] Dr. Bingham increased KHW's Zoloft dosage and scheduled a follow-up appointment for one-month out. [R. 270.]    KHW saw Dr. Castellvi on March 25, 2011, for a routine follow-up visit for depression. [R. 264.] KHW reported she was still having episodes where she lashes out at her mother and sister, and reported feeling depressed before having these out burst of anger. [*Id.*] KHW's mother reported the Zoloft was not helping and that KHW was getting worse with her episodes of anger. [*Id.*] Dr. Castellvi diagnosed KHW with bipolar disorder, started her on Lamictal, and referred her to a psychiatrist. [R. 266.]

On April 18, 2011, Dr. Castellvi completed a form about Plaintiff's mental condition indicating a diagnosis of bipolar disorder and Lamictal as the prescribed medication. [R. 291.] Dr. Castellvi also indicated KHW had been referred to Dr. Burns for psychiatric care. [*Id.*] Dr. Castellvi noted that Plaintiff was oriented as to time, person, place and situation; had appropriate thought content and adequate attention, concentration and memory; but had a racing and distractable thought process and a depressed and angry mood/affect. [*Id.*] Dr. Castellvi indicated KHW's work-related limitations due to her mental condition was slight and noted that KHW has had trouble in school. [*Id.*]

17

KHW returned to Dr. Castellvi on April 27, 2011, on follow-up after seeing the psychologist. [R. 327.]  On June 22, 2012, Plaintiff saw Dr. Castellvi for a well check visit. [R. 569.] KHW's mother reported KHW had caught up with her school work and was being advanced a grade. [*Id.*]  She also reported that KHW had been placed on Homebound this past year and would return to school in the Fall. [*Id.*]  KHW saw Dr. Castellvi again on July 31, 2012, for a medication check and on follow-up for her bipolar disorder.  [R. 565.]  KHW indicated she was on her third week of taking Lamictal and did not feel any different. [*Id.*] KHW's mother also stated she saw no difference but understood it took time to work and that the dose was being increased biweekly in order to hit the target dose. [*Id.*] CFM treatment notes from June 22, 2012, indicated Plaintiff had stopped taking Zoloft and was seeing a Child Psychologist and wanted to continue behavior therapy.  [R. 573.] KHW was also diagnosed with childhood obesity at this appointment and encouraged to diet and exercise. [*Id.*]

On August 1, 2012, Dr. Castellvi completed a Patient Signs and Symptoms check list indicating that the following applied with respect to KHW:

* Depressed or irritable mood
* Markedly diminished interest or pleasure in almost all activities
* Appetite or weight increase or decrease or failure to make expected weight gains
* Sleep disturbance
* Psychomotor agitation or retardation
* Fatigue or loss of energy
* Feelings of worthlessness or guilt
* Difficulty thinking or concentrating
* Manic syndrome, characterized by elevated, expansive or irritable mood
* Inflated self-esteem or grandiosity
* Easy distractibility

18

[R. 529.]  Dr. Castellvi also indicated that KHW suffered severe limitations caused by her psychiatric condition in the following areas:

* age-appropriate cognitive/communicative function
* age-appropriate social functioning
* age-appropriate personal functioning, and
* difficulties in maintaining concentration, persistence or pace

[R. 530.]  Additionally, Dr. Castellvi noted that Plaintiff had the following limitations caused by mental illness:

* *mild limitations* in personal functioning self-care, i.e, personal needs, health and safety;
* *marked limitations* in social functioning (a child's capacity to form and maintain relationships with parents, other adults, and peers);
* *marked limitations* with respect to deficiencies of concentration, persistence, or pace resulting in frequent failure to complete tasks in a timely manner;
* *marked limitations* with respect to attending and completing tasks (ability to focus and maintain attention and to begin, carry through and finish activities);
* *marked limitations* with respect to interacting and relating with others (ability to initiate and sustain emotional connection with others, comply with rules, respond to criticism, and respect and take care of the possessions of others);
* *marked limitations* with respect to caring for self (the ability to maintain a healthy emotional state, including ability to get emotional wants and needs met in appropriate ways; how patient copes with stress and changes in environment; and whether patient can take care of own health, possessions and living)
* *extreme limitations* in acquiring and using information (ability to learn and use information learned)

[R. 530–31.]

On August 16, 2012, KHW saw Dr. Patricia Bouknight ("Dr. Bouknight") with CFM for a medication check for bipolar disorder and reported that she was taking 100 mg of Lamictal. [R. 576.]  KHW and her mother reported that KHW was still showing no signs of improvement.  [*Id.*]  Dr. Bouknight reviewed the case with Dr. Castellvi who determined to continue KHW on Lamictal and to have her follow up with a psychiatrist and to return in two weeks.  [R. 578.]  KHW returned to Dr. Castellvi on September 17, 2012, for a medication

19

check up and informed the doctor that she had weaned herself off of Lamictal because she did not like the way it made her feel.  [R. 579.]  Treatment notes indicated KHW had a history of non-compliance with medication and other forms of treatment, and that she had been seeing Dr. Burns for behavior therapy, however, Dr. Burns was not pleased that she had discontinued her medication.  [*Id.*]  KHW's mother indicated that KHW was still very mean and verbally abusive to her and KHW's sister, and that she was completely "[t]ired of it." [*Id.*] Lamictal was not restarted at that time and KHW was recommended for a psych referral as her non-compliance with medication and treatment made it difficult to treat her disease.  [R. 582.]

### Dr. Morton's Opinion

On or about April 26, 2011, upon referral by Youth Transition Services, KHW saw Dr. Todd Morton, Ph.D. ("Dr. Morton") for psychological evaluation to assess her behavioral and emotional functioning and to provide recommendations regarding treatment.  [R. 301.] Dr. Morton noted that KWH was in the ninth grade and receiving special education services in the form of study skills resource classes due to learning disabilities in reading and math. [R. 302.]  He reported that KWH's grades were As and Bs for the first time during the first semester (she generally earned Cs and Ds), but that her academic and behavioral performance appeared to have declined significantly during the second semester to the point of her being taken out of school and placed on homebound instruction.  [*Id.*]  Dr. Morton noted Plaintiff had some long-standing behavioral and emotional problems including hyperactivity and impulsivity, poor anger control, and sensory integration disorder which resulted in her not liking to be touched or held.  [R. 303.]  A traumatic experience on the school bus during the eighth grade where KHW was forcibly fondled by several male

20

classmates, which was made more severe by her dislike for being touched or restrained, resulted in a decline in her emotional and behavioral functioning such that she began reporting significant symptoms of posttraumatic stress.  [*Id.*; R. 293.]

### *Dr. Burns's Opinion*

Dr. Burns, a Clinical Psychologist with Youth Transitional Services, completed a Calocus worksheet for KHW on or about June 10, 2011, indicating that KHW posed a significant potential risk of harm; was seriously impaired functionally; had significant co-morbidity; was in a mildly stressful recovery environment; had a limited support system; had moderate or equivocal response to treatment and recovery management; and showed constructive acceptance and engagement between child/adolescent and child/caretaker. [R. 296.]  Dr. Burns began seeing KHW on a weekly basis from September 13, 2011, through June 9, 2012, to help KHW deal with distress associated with memories of trauma, to eliminate self-harm behaviors, and to "reduce belief in schemas of danger, lack of predictability/control daily to no more than 3 times per week"; and began meeting with KHW and her family to discuss reducing family arguments to 4 or less per week.  [*See* R. 428–528, 533–61.]

In a letter[8], Dr. Burns wrote to Plaintiff's counsel stating that she had seen [KHW] and her family weekly for assessment and therapy since June of 2011. [R. 532.] Dr. Burns opined that:

> [KHW] suffers from long-standing behavioral and emotional problems, including severe distractibility, impulsivity, poor

---

[8]Plaintiff contends the letter was submitted on August 9, 2012 [Doc. 18-1 at 11], and this action's Court Transcript Index indicates that it was submitted on that date.  The ALJ noted that the letter was undated. [R. 24.]

21

anger control, and sensory integration disorder. She has limited coping skills and endorses passive suicidal ideation with a history of self-harm. Kristen exhibits frequent unfocused and violent temper tantrums. She also reports significant paranoid ideation and concerns that someone will harm family members.

[KHW] has been unable to attend school for approximately two years because of these debilitating symptoms. Social interactions are limited to family members and online friends. She has been prescribed a number of different psychiatric medications without significant positive response.

At this time, [KHW] is unable to adequately function without significant parental supervision. It is my opinion that [KHW] has responded well to intensive treatment; however, much continued positive progress is needed to adequately stabilize her condition and prevent the need for residential placement.

[*Id.*]

Between August 11, 2012, and December 19, 2012, Dr. Burns conducted both individual and family therapy in KHW's home several days a week with the continued goal of addressing distress associated with memories of trauma, eliminating self-harm behaviors, and "reduc[ing] belief in schemas of danger, lack of predictability/control daily." [R. 599–629.]

### *The ALJ's Consideration of Dr. Castellvi and Dr. Burns's Opinions*

The ALJ assigned no weight to Dr. Castellvi's opinion that KWH was "disabled" and gave little weight to the remainder of his opinion explaining that:

Even though Dr. Castellvi is a treating source, his opinion that the claimant is "disabled" is an opinion on an issue that is reserved to the Commissioner and, thus, is never entitled to controlling weight or special significance. In this case, I give little weight to Dr. Castellvi's opinion, as his own records, as well as substantial other evidence, contradict the symptoms and limitations he has described. In notes from June of 2012, Dr. Castellvi himself indicated that the claimant has friends,

22

> dates, and has a boyfriend; and that she caught up with all of her schoolwork that year and advanced (Exhibit 21F). While Dr. Castellvi indicated that the claimant has marked limitation in social functioning; concentration, persistence, and pace; and attending and completing tasks; as well as extreme limitations in acquiring and using information, questionnaires from the claimant's teachers, who have daily contact with her, do not support such extreme limitations (Exhibit 2E). Therefore, I conclude that Dr. Castellvi's opinion of disability cannot be adopted.

[R. 24.]

Likewise, the ALJ considered Dr. Burns's findings but noted that Dr. Burns did not express a specific opinion as to the applicability of the standards of SSI.  [*Id.*]  The ALJ further explained that:

> Dr. Burns' statements are not supported by her quite minimal treatment notes, which give no description of the claimant's ongoing symptoms and behavior. In addition, Dr. Burns' assertions are inconsistent with other evidence of record. Questionnaires from the claimant's teachers, based on their daily interactions with the claimant, make no mention of the violent outbursts and tantrums that Dr. Burns reports, and indicate that the claimant has no problems interacting with teachers or other students, and in fact state that she is quite talkative with her peers (Exhibit 2E). Records from Dr. Castellvi from June of 2012 also contradict Dr. Burns' statements, noting that the claimant spends time with friends for fun, dates, and has a regular boyfriend (Exhibit 21F).

[*Id.*]

### *Discussion*

When an ALJ decides to assign less than controlling weight to a treating physician's opinion, the ALJ must "rationally articulate the grounds for her decision."  *Steel v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002).  Under 20 C.F.R. § 416.927(c), the ALJ must weigh various factors in deciding the weight due a treating physician's opinion.  *See Mastro v.*

*Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). "[E]ven where the treating physician's opinion is not entitled to 'controlling weight' because it is inconsistent with the other substantial evidence in the case record, the treating physician's opinion should not be wholly rejected." *Zarkowski v. Barnhart*, 417 F. Supp. 2d 758, 765 (D.S.C. 2006). The ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. § 416.927(c).

Here, the ALJ discounted the treating source opinions of both Dr. Castellvi and Dr. Burns based on lack of support in the record and questionnaires from the KHW's teachers. And, while the ALJ assigned "little weight" to Dr. Castellvi's opinion, she failed to assign any weight whatsoever to Dr. Burns's opinion. The ALJ rejected Dr. Burns's opinion indicating that "she did not express a specific opinion as to the applicability of the standards of Supplemental Security Income." [R. 24.] Upon consideration of the record evidence and the briefs of the parties, the Court finds the ALJ failed to rationally articulate her decision to give less than controlling weight to Dr. Castellvi and Dr. Burns's opinions. Thus, the Court cannot find that the ALJ's weighing of these opinions is supported by substantial evidence.

In discounting these opinions, the ALJ stated that she relied on statements from KHW's PE, Algebra, and English teachers dated April 19, 2011, which indicated that they were based on a four month period of time. [*See* R. 136–59.] KHW's PE teacher indicated that KHW had been absent from his class, which met daily, twelve times in the four month

24

period and noted no problems with her ability to acquire and use information, attend and complete tasks, interact with others, move and manipulate objects, or care for herself. [R. 136–43.] KHW's Algebra teacher, who saw her daily as well, indicated that KHW had problems functioning in the area of acquiring and using information, attending and completing tasks and caring for herself. [R. 145–46, 149.] The Algebra teacher noted that KHW "really struggles to complete multi-step/detailed problems that have a long process that must be completed in order to solve the problem." [R. 145.] She also noted that KHW had a "hard time focusing long enough to complete multi-step problems, often leaving a classwork assignment unfinished" and that "[s]he is easily distracted when working on longer, more difficult problems." [R. 146.] The Algebra teacher rated KHW as having a serious problem in these areas. [*Id.*] KHW's English teacher noted problems in KHW's ability to attend and complete tasks and indicated that it was difficult for KHW to work independently as she is "easily distracted and often seeks attention from other students." [R. 154.] She rated KHW as having serious problems in the areas of changing from one activity to another without being disruptive and working without being distracting to herself or others. [*Id.*] The English teacher also noted problems in KHW's interacting and relating to others noting that KHW had a problem transitioning to new activities, took a while to settle down, was very talkative, and often had a problem keeping her hands to herself. [R. 155.]

While the ALJ opined that Dr. Castellvi's findings that KHW had marked limitations in social functioning; concentration, persistence, and pace; and attending and completing tasks; and extreme limitations in acquiring and using information were not supported by the questionnaires from KHW's teachers, the Court notes that the questionnaires are more

25

consistent with Dr. Castellvi's findings than contradictory to them.  Furthermore, the record is clear that while Plaintiff did well the first semester of her ninth grade year (the period covered by the teacher questionnaires), KHW's functioning deteriorated in the second semester to the point that she was homebound.  [R. 302.]  And, while KHW had friends and a boyfriend, the record is also clear that her social interactions were limited to family members and online friends.  [R. 532.]  In other words, the evidence relied on by the ALJ is not such evidence which a reasoning mind would accept as sufficient to support the ALJ's particular conclusion, especially in light of the intensive treatment documented by the doctors.

Additionally, while the ALJ determined that the opinions of Dr. Castellvi and Dr. Burns were not supported by their own records, the ALJ failed to explain her findings with sufficient detail for the Court to give adequate review.  It is not clear to the Court which findings of Dr. Castellvi and Dr. Burns the ALJ found were not supported by the record.  Dr. Burns treated KHW between September of 2011 to December of 2012 on a weekly basis, which she deemed intensive treatment.  And, although the ALJ stated that Dr. Burns's counseling and therapy records provided no description of KHW's mental status, concerns, symptoms, or activities, the Court notes that Dr. Burns's records indicate, for example, that KHW reported she had frequent negative verbal interactions with her sister, KHW agreed with goals of eliminating self-harm behaviors and to counter negative thoughts about self, world, and future, and KHW was completing a daily thought record to monitor negative thoughts. [R. 438, 441, 445.]  Thus, Dr. Burns's records did document to some extent KHW's mental status, symptoms, and activities.  Moreover, based on her treatment of

KHW, Dr. Burns concluded that KHW need continued positive treatment to stabilize her mental condition and prevent her from requiring residential placement. [R. 532.]

Treatment records indicated that Dr. Castellvi treated KHW regularly between October of 2010 to at least September of 2012. Based on his treatment history, Dr. Castellvi found KWH was markedly limited with respect to attending and completing tasks, interacting and relating with others, and caring for herself. [R. 530.] The ALJ likewise found KHW had marked limitation in interacting and relating to others. [R. 28.] So, at least in this instance, the ALJ should have found Dr. Castellvi's findings consistent with the record evidence. Likewise, KHW's Algebra and English teachers found KHW to have serious problems in the area of attending and completing tasks. [R. 145–46 (KHW "really struggles to complete multi-step/detailed problems that have a long process that must be completed in order to solve the problem"; had a "hard time focusing long enough to complete multi-step problems, often leaving a classwork assignment unfinished"; and "is easily distracted when working on longer, more difficult problems."); [R. 154–55](KHW's English teacher noted problems in KHW's ability to attend and complete tasks and indicated that it was difficult for KHW to work independently as she was "easily distracted and often seeks attention from other students"; had serious problems in the areas of changing from one activity to another without being disruptive and working without being distracting to herself or others; and also noted problems in KHW's interacting and relating to others noting that KHW had a problem transitioning to new activities, took a while to settle down, was very talkative, and often had a problem keeping her hands to herself.)] Additionally, Dr. Morton's opinion was consistent with and supported the opinions of Dr. Castellvi and Dr. Burns.

Further, consistent with Dr. Castellvi and Dr. Burns's findings, KHW's mother testified that KHW is paranoid and is not capable of emotionally attaching herself to anyone; this problem intensified after the bus incident.  [R. 81.]  She also testified that every day something would upset KHW, and it was like walking on egg shells to try and figure out what was going to set her off [R. 82]; that she had to give KHW one chore or instruction at a time and, even then, had to give her frequent reminders until the task was done [R. 85]; that KHW was not able to focus on anything for very long and that, while she loves to draw, she could only draw for 10–15 minutes at a time [R. 85–86].  The ALJ did not address the credibility of the mother's testimony which seems to support the findings of the treating physicians.

As stated previously, under 20 C.F.R. § 416.927(c), if an ALJ determines that a treating physician's opinion is not entitled to controlling weight, she must then consider the weight to be given to the physician's opinion by applying five factors identified in the regulation: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion.  *Id.*  Because the ALJ did not give Dr. Castellvi and Dr. Burns's opinions controlling weight, she was required to consider each of the above factors in evaluating the opinions.  She failed to do so; thus, the Court cannot find the ALJ's weighing of the treating physician opinions is supported by substantial evidence.

**Remaining Allegations of Error**

28

Because the Court finds the ALJ's failure to properly consider and weigh Dr. Castellvi and Dr. Burns's opinions is a sufficient basis to remand the case to the Commissioner, the Court declines to specifically address Plaintiff's additional allegations of error by the ALJ. However, upon remand, the Commissioner should take into consideration Plaintiff's remaining allegations of error.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, it is recommended that the decision of the Commissioner be REVERSED and REMANDED for administrative action consistent with this recommendation, pursuant to sentence four of 42 U.S.C. § 405(g).

IT IS SO RECOMMENDED.

July 29, 2015                         s/Jacquelyn D. Austin
Greenville, South Carolina            United States Magistrate Judge